UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAY E. GLENEWINKEL, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL NO. 3:20-CV-2256-B |
| | § | |
| MD CARVAJAL, *Director of the* | § | |
| *Bureau of Prisons, et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim (Doc. 111) filed by Defendants Michael Carvajal, Jeffery D. Allen, M. Bayless, A. Jenkins, K. Zook, and L. Smith (collectively "the Officials"). For the following reasons, the Court **GRANTS** the Officials' motion under Federal Rule of Civil Procedure 12(b)(1) and **DISMISSES** Plaintiffs' claims **WITHOUT PREJUDICE**.

### I.

### BACKGROUND

*A.  Factual Background*

This is an Eighth Amendment case alleging inadequate safety protocols at Federal Correctional Institution ("FCI") Seagoville, a federal prison, during the COVID-19 pandemic. *See generally* Doc. 97, 3d Am. Compl.

Plaintiffs are inmates at FCI Seagoville and they brought suit in August 2020 against the director of the Bureau of Prisons ("BOP"), the medical director of the BOP, the warden at FCI

-1-

Seagoville, two associate wardens at FCI Seagoville, and the "acting Captain" at FCI Seagoville. *Id.* ¶¶ 7–12. They assert violations of their Eighth Amendment right to be free from cruel and unusual punishment. *Id.* ¶¶ 64–71. Generally, Plaintiffs allege that they "are unable to protect themselves from the spread of the [COVID-19] virus" because the BOP "ha[s] not provided adequate protections." *Id.* ¶ 68. They further allege that the Officials have "refus[ed] to separate infected inmates, requir[ed] infected staff to work, and refus[ed] to properly take basic protective precautions[.]" *Id.* In particular, Plaintiffs recount instances throughout the pandemic that prison staff have not worn proper personal protective equipment ("PPE"), ignored inmate complaints of "COVID-19-like symptoms," held unnecessary recreational gatherings of inmates, refused to test inmates for the virus, and visited locations with known or possible COVID-19 outbreaks. *Id.* ¶¶ 20-1–30,[1] 43–45. This conduct, according to Plaintiffs, has deprived them of their right to be free from cruel and unusual punishment. *Id.* ¶ 71.

Plaintiffs seek, on behalf of themselves and those similarly situated, "a declaratory judgment that [the Officials'] policies and practices violate the Eighth Amendment"; an "[o]rder [requiring the Officials] to create and implement a mitigation plan for prevention of COVID-19"; an "[o]rder [requiring the Officials] to provide all necessary and appropriate health care"; an "[a]ward [of] Plaintiffs['] costs, expenses, and reasonable attorneys' fees"; "[m]onetary damages"; "[p]unitive damages"; and "[a]ny further relief that this Court deems just, necessary, or appropriate." *Id.* at 15–16.

---

[1] Plaintiff's Third Amended Complaint contains two paragraphs 20 and two paragraphs 21. *Id.* ¶¶ 20–21. Where necessary, the Court designates the first set of paragraphs 20 and 21 as 20-1 and 21-1 and the second set as 20-2 and 21-2.

B.  *Procedural Background*

Plaintiffs initially filed this suit *pro se. See* Doc. 1, Compl. However, the Court subsequently appointed counsel and ordered Plaintiffs to file an amended complaint through counsel. Doc. 56, Order Appointing Counsel, 3; Doc. 68, Order, 1. Plaintiffs filed their amended complaint on December 9, 2020. *See* Doc. 72, Am. Compl. The BOP Officials timely moved to dismiss the complaint due to: (1) a lack of subject matter jurisdiction; (2) Plaintiffs' "forward-looking relief" for "backward-looking allegations"; and (3) Plaintiffs' "fail[ure] to exhaust administrative remedies as required under the Prison Litigation Reform Act (PLRA), for which there is no COVID-19 exception." Doc. 93, Defs.' Mot., 1. Finding a lack of subject matter jurisdiction, the Court granted the motion but permitted Plaintiffs to file an amended complaint to "(1) raise a theory of liability under *Bivens* and (2) seek specific monetary relief, if they indeed maintain they are entitled to money damages." *Glenewinkel v. Carvajal*, 2021 WL 2952833, at *3 (N.D. Tex. July 14, 2021). Plaintiffs filed the operative complaint on August 13, 2021. *See* Doc. 97, 3d Am. Compl. The BOP Officials again moved to dismiss the complaint. Doc. 111, Defs.' Mot. The motion is fully briefed and ripe for review. For the reasons explained below, the Officials' motion is **GRANTED** on the ground that this Court lacks jurisdiction.

## II.

## LEGAL STANDARD

A.  *Rule 12(b)(1) Standard*

"Federal courts are courts of limited jurisdiction." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). For that reason, they can adjudicate claims only when authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

"Federal Rule of Civil Procedure 12(b)(1) provides the vehicle through which" a party may challenge federal jurisdiction. *Armstrong v. Tygart*, 886 F. Supp. 2d 572, 584 (W.D. Tex. 2012) (citations omitted).

"A Rule 12(b)(1) motion can mount either a facial or factual challenge." *MacKenzie v. Castro*, 2016 WL 3906084, at *2 (N.D. Tex. July 19, 2016). A facial challenge occurs "[w]hen a party files a Rule 12(b)(1) motion without including evidence." *Id.* A factual challenge, by contrast, occurs when a party supports its Rule 12(b)(1) motion with evidence. *Id.*

In both cases, the burden of proof "is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). Yet that is no high bar: "'[I]t is extremely difficult to dismiss a claim for lack of subject matter jurisdiction.'" *Santerre v. AGIP Petrol. Co.*, 45 F. Supp. 2d 558, 566 (S.D. Tex. 1999) (quoting *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1260 (11th Cir. 1997)). Dismissal "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998)).

## III.

## ANALYSIS

The Officials move to dismiss the Third Amended Complaint for five reasons: (1) Plaintiffs fail to plead a viable cause of action; (2) the United States has not waived sovereign immunity and so the Court lacks jurisdiction over the claim; (3) Plaintiffs' claim is moot; (4) Plaintiffs fail to justify the request for injunctive and declaratory relief; and (5) Plaintiffs fail to show exhaustion of administrative remedies as required under the PLRA. Doc. 111, Defs.' Mot., 7–15. Because the

second argument decides the issue before the Court and because the Court must determine subject matter jurisdiction before ruling on the merits, the Court does not address the Officials' other arguments. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).

A.   *The APA Does Not Waive Sovereign Immunity for Plaintiffs' Claims*

Section 702 of the Administrative Procedure Act ("APA") waives sovereign immunity for some non-money damages claims. 5 U.S.C. § 702. Section 702 provides:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

*Id.*

Specifically, the APA allows judicial review of any "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Thus, judicial review under the APA is only available if, first, a "plaintiff . . . identifies some 'agency action' affecting him in a specific way." *Ala.-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 489 (5th Cir. 2014) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990)). Second, a "plaintiff must show that he has 'suffered legal wrong because of the challenged agency action, or is adversely affected or aggrieved by that action within the meaning of a relevant statute.'" *Id.* (quoting *Lujan*, 497 U.S. at 883). For review "sought pursuant only to the general provisions of the APA," a plaintiff must also prove that the challenged agency action was a "final agency action." *Id.*

The Officials assert that Plaintiffs failed to plead the requirements for an APA claim: (1) a specific agency action that affected the Plaintiffs, (2) a "legal wrong" that Plaintiffs suffered, and (3) final agency action. Doc. 111, Defs.' Mot., 8.[2]

Plaintiffs argue that the Officials "misstate the requirements under 5 U.S.C. § 702" because "final agency action" is not a requirement for a constitutional claim under the APA. Doc. 115, Pls.' Resp., 5. Finally, Plaintiffs aver that they satisfy the "actual requirements" for an APA claim. *Id.*

Only if Plaintiffs show their claim meets the requirements of § 702 can the Court find a waiver of sovereign immunity. *See* 5 U.S.C. § 702. Thus, to establish a waiver of sovereign immunity, the Plaintiffs must first establish the requirements for § 702. *Ala.-Coushatta Tribe*, 757 F.3d at 488. Before the Court can examine whether Plaintiffs satisfy these requirements, it must first determine whether the Plaintiffs bring a claim pursuant to the "general provisions of the APA" or "a statutory or non-statutory cause of action" because the latter does not require proof of "final agency action." *See id.* at 489.

Plaintiffs' claim for unconstitutional conditions of confinement in violation of the Eighth Amendment, Doc. 97, 3d Am. Compl., 14, falls within the "statutory or non-statutory cause of action" category because it hinges on a constitutional right, not the general provisions of the APA that provide for review of agency action. *See* Doc. 115, Pls.' Resp., 5 (identifying the two

---

[2] The Officials also argue that § 702 of the APA "does not provide a freestanding cause of action for injunctive relief." Doc. 111, Defs.' Mot., 8. And since Plaintiffs fail to assert a cause of action, the Court should dismiss the Complaint. *Id.* Plaintiffs counterargue that § 702 waives sovereign immunity and that they allege a constitutional violation as a cause of action, which establishes the Court's subject matter jurisdiction. Doc. 115, Pls.' Resp., 4–5.

Presumably, the Eighth Amendment provides an implied cause of action because the Supreme Court has previously found an implied cause of action under the Eighth Amendment for inadequate medical care provided by prison officials. *Carlson v. Green*, 446 U.S. 14 (1980). The Court further addresses this issue *infra* § III(B).

requirements for review under the APA for a statutory or non-statutory cause of action); *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 185–87 (D.C. Cir. 2006) (rejecting an argument that the APA's waiver of sovereign immunity only applies "to actions arising under the APA" because "review under APA § 704 is limited to 'final agency action'"); *Bear Creek Bible Church v. EEOC*, 2021 WL 5449038, at *13 (N.D. Tex. Nov. 22, 2021) (finding that "'finality' [was] not necessary for . . . waiver" of sovereign immunity for First Amendment claims based on EEOC guidance document and enforcement action because they arose outside of the APA). Therefore, assuming the Eighth Amendment creates a cause of action for Plaintiffs, the Court agrees with Plaintiffs that they only need to show (1) an agency action that affected them in some way and (2) that they suffered a "legal wrong" due to agency action.

Under the first requirement, Plaintiffs must establish an agency action that affected them in some way. Therefore, Plaintiffs may only bring suit against the BOP pursuant to this provision if the BOP is considered an agency under the APA. The APA defines "agency" as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency," and excepts several bodies to include Congress, the courts, and territorial governments. 5 U.S.C. § 701(b)(1). The BOP is not included in one of the exceptions. Therefore, the BOP is an agency under the APA. *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1233, 1239 (10th Cir. 2005)); *White v. Henman*, 977 F.2d 292, 293 (7th Cir.1992); *Ramer v. Saxbe*, 522 F.2d 695, 697 (D.C. Cir.1975); *Krilich v. Bureau of Prisons*, 346 F.3d 157, 159 (6th Cir. 2003); *see also McGlinchey v. United States*, 996 F.2d 306, 306 (5th Cir. 1993) (per curiam) ("[a]ssuming arguendo that the BOP is subject to the APA").

Next, the Court must determine if the BOP's alleged inaction constitutes "agency action" under the APA. While neither party raised this argument, the Court may raise this argument *sua sponte* because this affects the waiver of sovereign immunity and thus, the Court's subject matter jurisdiction. *See Gandy Nursery, Inc. v. United States*, 318 F.3d 631, 637 & n.1 (5th Cir. 2003) (noting that sovereign immunity deprives a court of jurisdiction and may be raised by the Government or a court at any stage of litigation). Section 701 of the APA adopts the definition of "agency action" from the general definition section of the APA, 5 U.S.C. § 701(b)(2), that defines the term as "includ[ing] the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Plaintiffs allege several failures of the BOP to act and several actions taken by the BOP in response to the COVID-19 pandemic. Doc. 97, 3d Am. Compl., ¶ 2. Because Plaintiffs point to no "rule, order, license, sanction, relief or the equivalent or denial thereof" as the basis for the waiver of sovereign immunity under the APA, the alleged acts are outside the APA's definition, *see* Doc. 115, Pls.' Resp., 5, so, their allegations must fall under the "failure to act" category. *See* Doc. 115, Pls.' Resp., 5 n.1 (listing several failings of the BOP to act).

The Supreme Court addressed § 551's "failure to act" category in *Norton v. Southern Utah Wilderness Alliance.* (*SUWA*), 542 U.S. 55 (2004). Section 706 of the APA provides the avenue for judicial review of "unlawfully withheld or unreasonably delayed" agency action. *SUWA*, 542 U.S. at 62 (quoting 5 U.S.C. § 706(1)). After discussing the definitions for the other categories of agency action, the Supreme Court held that, first, "'failure to act,' is . . . properly understood as a . . . failure to take one of the agency actions (including their equivalents) earlier defined in § 551(13)." *Id.* In other words, a "failure to act" is not a denial but is "limited . . . to a *discrete* action." *Id.* at 63. Second,

any compelled action must also be "legally required." *Id.* Section "706(1) empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing how it shall act.'" *Id.* at 64. Thus, a court may only compel an agency "to take a *discrete* agency action that it is *required to take*." *Id.* at 63–64.

Returning to Plaintiffs' allegations, the Third Amended Complaint identifies six agency actions for the Court to review. Plaintiffs allege that the BOP (1) "[f]ail[ed] to provide immediate and/or adequate medical care"; (2) "[f]ail[ed] to adopt and implement policies and procedures to prevent and mitigate the spread of COVID-19"; (3) "[i]mpos[ed] further harm and mental/physical stress to infected inmates through forced moves" throughout the prison; (4) "[f]orc[ed] inmates into extremely crow[d]ed situations"; (5) failed to require staff to wear PPE; and (6) "[i]ssu[ed] blanket denials of compassionate release/home confinement requests." Doc. 97, 3d Am. Compl., ¶ 2. To remedy these agency actions, Plaintiffs request (1) a "declaratory judgment that [the BOP's] policies and practices violated the Eighth Amendment"; (2) a Court Order requiring the BOP "to create and implement a mitigation plan for prevention of COVID-19 . . . overseen by a qualified public health expert"; (3) a Court Order requiring BOP "to provide all necessary and appropriate health care"; and (4) various forms of monetary damages. Doc. 97, 3d Am. Compl., 15–16.

The Court finds that none of the alleged actions amount to "a failure to take one of the agency actions (including their equivalents) earlier defined in § 551(13)." *See SUWA*, 542 U.S. at 62. The Third Amended Complaint makes no reference to any "rule, order, license, sanction, relief or the equivalent or denial thereof" that required BOP to act. *See* Doc. 97, 3d Am. Compl. Without identifying any discrete action required by the BOP, the Third Amended Complaint fails to identify

a reviewable agency action under the APA. Therefore, Plaintiffs fail to identify any "agency action" on which a waiver of sovereign immunity under the APA can be based.

Further, the APA does not provide an avenue for "general judicial review of [an agency's] day-to-day operations." *Lujan*, 497 U.S. at 899. The broad and sweeping allegations in the Third Amended Complaint amount to a "programmatic challenge," which is forbidden by the Supreme Court's decision in *Lujan v. National Wildlife Federation*. *Sierra Club v. Peterson*, 228 F.3d 559, 566 (5th Cir. 2000). In *Lujan*, an environmental group challenged the entirety of the Bureau of Land Management ("BLM")'s "land withdrawal review program," which managed the disposal or retention of federal lands. *Lujan*, 497 U.S. at 875–78. They brought a claim under § 706 of the APA challenging BLM's actions. *Id.* at 879. The Supreme Court held that the group could not "challenge the entirety of [BLM's] so-called 'land withdrawal review program'" because the program "[wa]s not an 'agency action' within the meaning of § 702." *Id.* at 890. Therefore, the group could not "seek wholesale improvement of this program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made." *Id.* at 891. Except where provided otherwise by Congress, courts must proceed on a "case-by-case approach" when evaluating an entire program. *Id.* at 893–94.

Similarly, in another case, the Fifth Circuit found a lack of subject matter jurisdiction for an APA claim challenging third party drilling leases and permits on the Alabama-Coushatta Tribe of Texas ("Tribe")'s aboriginal lands. *Ala.-Coushatta Tribe*, 757 F.3d at 486–87, 490. The Fifth Circuit characterized the complaint as a broad programmatic attack challenging "all of the leases, permits, and sales administered by multiple federal agencies, including any ongoing action by these agencies that encroach on the Tribe's aboriginal title." *Id.* at 490. Even though the complaint challenged only

the permits and leases on the Tribe's lands, the Fifth Circuit held the "allegations d[id] not challenge specific 'agency action'" because "[t]he challenge [wa]s to the way the Government administers these programs and not to a particular and identifiable action taken by the Government." *Id.* at 490–91. Furthermore and similar to this case, the Tribe failed to "specifically identify the agency action[,]" but even if the Tribe did, the challenge would still fail because it "[wa]s directed at the federal agencies' broad policies and practices." *Id.* at 491.

The allegations of this case closely resemble the challenged actions in *Alabama-Coushatta Tribe*. Even though Plaintiffs only attack BOP decisions made at FCI Seagoville, these challenges cannot establish agency action because "[t]he challenge[s] [are] to the way the Government administers [the COVID-19 policies] and not to a particular and identifiable action taken by the Government." *See id.* at 490–91. Plaintiffs seek "wholesale improvement" of the COVID-19 mitigation policies and program within the BOP. *See Lujan*, 497 U.S. at 891. Like in *Alabama-Coushatta Tribe*, even though Plaintiffs identify six agency actions, the crux of the challenge is to how the Government implements the COVID-19 mitigation policies. *See Ala.-Coushatta Tribe*, 757 F.3d at 490–91; Doc. 97, 3d Am. Compl., 15. Plaintiffs directly challenge "the [BOP's] broad policies and practices", which cannot serve as the basis for APA review. *See Ala.-Coushatta Tribe*, 757 F.3d at 491. Such judicial review would require "pervasive oversight" not contemplated under the APA. *SUWA*, 542 U.S. at 67; *Beck v. McDonald*, 2015 WL 13777969, at *15 (D.S.C. Mar. 31, 2015), *aff'd*, 848 F.3d 262 (4th Cir. 2017). Therefore, Plaintiffs' claims may not proceed under the APA and the APA does not act as a waiver of sovereign immunity to give the Court subject matter jurisdiction over these claims.

B.   *The Court Does Not Have Subject Matter Jurisdiction Under Bivens*

After dismissing Plaintiffs' Amended Complaint, the Court granted Plaintiffs leave to amend their Complaint to "raise a theory of liability under *Bivens*" because Plaintiffs' could not, for the first time, assert jurisdiction under *Bivens* in their Response to the Officials' Motion to Dismiss. *Glenewinkel v. Carvajal*, 2021 WL 2952833, at *3 (N.D. Tex. July 14, 2021). Plaintiffs added the *Bivens* theory and refiled their complaint. *See* Doc. 97, 3d Am. Compl., 2–3. Plaintiffs now argue that the Court has subject matter jurisdiction based on the Eighth Amendment, through *Bivens*. *Id.*

The Officials argue that Plaintiffs cannot assert any *Bivens* claims because they failed to serve any of the Officials in their individual capacities and even their Fourth Amended Complaint[3] sought to sue the Officials in their official capacity, not their individual capacity. Doc. 111, Defs.' Mot., 5–6. Accordingly, because the United States has not waived sovereign immunity for the Officials in their official capacity, the Court lacks jurisdiction, per the Officials.[4] *Id.* at 9. The Officials further contend that Plaintiffs abandoned all claims for monetary damages because Plaintiffs' Response to the Motion to Dismiss only argues for injunctive relief. Doc. 117, Defs.' Reply, 1. Plaintiffs do not respond to any of these arguments. *See* Doc. 115, Pls.' Resp.

Despite Plaintiffs' lack of rebuttal, the Court must take the Complaint's allegations as true at the pleading stage. *Paterson*, 644 F.2d at 523. Moreover, the Court cannot assume unrebutted

---

[3] The Court denied Plaintiffs' Motion to file the Fourth Amended Complaint. Doc. 102, Elec. Order. The Fourth Amended Complaint sought to "clarify[y] that 'all defendants are sued only in their official capacity[.]'" Doc. 101, Mot. File 4th Am. Compl., 1.

[4] Before addressing the Officials' sovereign immunity argument, the Court must inquire into whether a *Bivens* cause of action exists. The *Bivens* question is antecedent to other questions presented, such as sovereign immunity. *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006–07 (2017). However, finding no *Bivens* cause of action exists for Plaintiffs' claims and special reasons counselling against an extension of *Bivens* in this context, the Court does not address the Officials arguments regarding sovereign immunity.

arguments are unopposed. *See Roberts v. City of Lancaster Code Enf't*, 2017 WL 1163859, at *2 (S.D. Ohio Mar. 29, 2017) (considering motions, including a motion to dismiss, when plaintiff failed to respond to motions); *Brown v. Belt*, 2017 WL 4581799, at *1 (S.D. W. Va. Oct. 13, 2017) (rejecting "defendants' motion to deem the motion to dismiss as unopposed" even though the plaintiff failed to respond to the motion). Additionally, "the [C]ourt has power to address 'abandoned claims' if, in its discretion, it determines it is appropriate to do so." *Porter v. Schweiker*, 648 F.2d 310, 312 (5th Cir. Unit B 1981) (per curiam) ("Whether Porter abandoned her *Bivens* claim is an issue that should be presented to the district court, on remand."). Therefore, in its discretion, the Court analyzes the issue based on the allegations within the Third Amended Complaint.

However, the Court finds that it also does not have subject matter jurisdiction over Plaintiffs' claim under *Bivens*. A *Bivens* cause of action permits a suit for damages against federal agents acting under the color of state law in violation of a constitutional right. *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). The Supreme Court has recognized a *Bivens* cause of action in three limited circumstances. *See id.* (violation of Fourth Amendment rights by narcotics agents); *Davis v. Passman*, 442 U.S. 228 (1979) (violation of Fifth Amendment right by United States congressman for employment discrimination); *Carlson v. Green*, 446 U.S. 14 (1980) (violation of Eighth Amendment rights by prison officials for inadequate medical care). To find whether a federal agent can be sued under *Bivens*, courts use a two-step test. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859–60 (2017). First, courts determine if the case differs "in a meaningful way from previous *Bivens* cases" by occurring in a "new context." *Id.* at 1859. A court's "understanding of a 'new context' is broad." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). Second, courts examine whether any "special factors counsel[] hesitation in the absence of affirmative action by Congress." *Abbasi*, 137 S. Ct. at

1857 (first quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980); and then quoting *Bivens*, 403 U.S. at 396). This inquiry primarily focuses on how separation-of-power principles determine whether Congress or the Judiciary is better-suited to decide whether a damages action should proceed. *Id.* at 1857–58.

  1. <u>Whether Plaintiffs' Claim Differs in a Meaningful Way from Other Recognized *Bivens*-type Claims</u>

To explain why Plaintiffs' claim cannot proceed as a *Bivens*-type cause of action, the Court briefly discusses the *Bivens* case and the subsequent caselaw it created. In *Bivens*, a man had his apartment searched for narcotics by federal agents while restrained in front of his family. 403 U.S. at 389. Because the Fourth Amendment guarantees a right to be free from unreasonable search and seizure, the Supreme Court reasoned that courts must "be alert to adjust their remedies so as to grant the necessary relief." *Id.* at 392. Thus, the Supreme Court found an implied cause of action under the Fourth Amendment to sue federal agents for money damages for "injuries . . . suffered as a result of the agents' violation of the Amendment." *Id.* at 397.

Relevant to Plaintiffs' Complaint, the Supreme Court later held a plaintiff could assert a *Bivens*-type action for violations of the Eighth Amendment. *Carlson v. Green*, 446 U.S. 14 (1980). In *Carlson*, a mother brought a claim on behalf of her deceased son who died when federal prison officials provided allegedly inadequate medical care for his asthma. *Id.* at 16 & n.1. In that case, the Court found "no special factors counsel[ed] hesitation in the absence of affirmative action by Congress." *Id.* at 19. Additionally, the Court found Congress had not provided an adequate alternative remedy for recovery that precluded establishing a *Bivens*-type action. *Id.* But, *Carlson*

marks the last time—and only the third time ever—that the Supreme Court has extended *Bivens* to find an implied cause of action. *Bivens*, 403 U.S. 388; *Davis*, 442 U.S. 228; *Carlson*, 446 U.S. 14.

Since *Carlson*, which was decided more than four decades ago, the Supreme Court has moved away from the "*ancien regime*" of recognizing implied causes of action towards one of caution. *Abbasi*, 137 S. Ct. at 1855. Courts now cautiously apply the two-step test mentioned above, which the Court now applies to Plaintiffs' Complaint.

Like *Carlson*, Plaintiffs assert their claim under the Eighth Amendment for events occurring in a federal prison. *See* Doc. 97, 3d Am. Compl., ¶¶ 64–71. However, that is where the similarities end. First, the Plaintiffs' claim differs "in a meaningful way from previous *Bivens* cases decided by the Court," *Abbasi*, 137 S. Ct. at 1859, because Plaintiffs' claim revolves around the BOP's COVID-19 mitigation policies that Plaintiffs allege endanger them and their health, Doc. 97, 3d Am. Compl., ¶ 68, not inadequate medical care leading up to and during an asthma attack.[5] *Carlson*, 446 U.S. at 16 & n.1. At present, Plaintiffs do not allege inadequate medical care for an existing medical condition. *See* Doc. 97, 3d Am. Compl. Instead, Plaintiffs' allegations revolve around the threat of contracting COVID-19 during a worldwide pandemic. Their allegations mostly attack the BOP's mitigation techniques, such as a lack of PPE and social distancing. *Id.* ¶ 2.

The most similar allegation to *Carlson* is the "fail[ure] to provide immediate and/or adequate medical care to inmates who complained of symptoms and/or pains." *Id.* Plaintiffs further flesh out this allegation with assertions that BOP officials denied testing to inmates, inmates fell ill due to COVID-19, and inmates had to live in sections of the prison without air conditioning "and without

---

[5] Even though Plaintiffs' claim arises from the same constitutional provision as *Carlson*, this does not guarantee a cause of action. *See Hernandez II*, 140 S. Ct. at 743.

any treatment." *Id.* ¶¶ 20-1–21-1, 29–30, 33, 45. Yet, Plaintiffs admit they witnessed other "inmates being carted off to medical while others were loaded into ambulances and taken to hospitals," which shows *treatment was provided*. *Id.* ¶ 42. The other allegations regarding a lack of testing are not a failure to *treat* a medical condition because testing is to detect a medical condition, not treat a medical condition. Those allegations therefore cannot support a *Bivens* claim under *Carlson*. *See Stone*, 2021 WL 2936055, at *6 (denying *Bivens* extension for claim asserting BOP inadequately "respond[ed] to the COVID-19 pandemic"). Moreover, the allegations about a lack of medical treatment are conclusory at best because they do not identify what medical treatment was denied to Plaintiffs, nor what medical treatment existed at that early stage in the pandemic. Doc. 97, 3d Am. Compl., ¶¶ 2, 33, 70. As Plaintiffs' Complaint shows, inmates with severe cases of COVID-19 received treatment in a hospital. *Id.* ¶ 42. Plaintiffs' allegations amount to a "disagreement with prison officials' decisions regarding [their] medical care," an incognizable claim under the Eighth Amendment. *Mostafa v. Barr*, 2021 WL 330167, at *12 (D. Colo. Jan. 30, 2021) (collecting cases). Such a distinction makes Plaintiffs' *Bivens* claim differ in a meaningful way from the claim in *Carlson*.

  2. <u>Whether Special Factors Counsel Restraint in Extending *Bivens*</u>

The Court also finds special factors counsel the Court against extending *Bivens* to cover the type of claim presented by Plaintiffs. *See Stone v. Wilson*, 2021 WL 2936055, at *7 (N.D. Tex. July 13, 2021). First, Congress already provided prisoners a cause of action—the PLRA—to challenge their conditions of confinement. *See* 42 U.S.C. § 1997e. However, the PLRA does *not* allow prisoners to sue for damages, which implies that Congress decided to not allow a cause of action for money damages for claims like Plaintiffs'. *Id.* Second, the Federal Tort Claims Act potentially provides an alternative remedy under which Plaintiffs could pursue a claim for damages. 28 U.S.C.

§§ 1346(b)(1), 2679(b)(1). Third, "[r]unning a prison . . . requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Butler v. S. Porter*, 999 F.3d 287, 295 (5th Cir. 2021) (quoting *Turner v. Safley*, 482 U.S. 78, 84–85 (1987)). So, separation-of-powers principles counsel restraint when adjudicating in the context of prison administration. *Id.* For all these reasons, special factors counsel against extending *Bivens* to cover the allegations in Plaintiffs' Complaint.

C.     *The Court Denies Leave to Further Amend the Complaint*

Plaintiffs do not request leave to further amend their Complaint. *See* Doc. 115, Pls.' Resp., 9. Normally the Court will allow a plaintiff the opportunity to amend where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based. *See McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 103 (5th Cir.1995). In this case, the Court previously provided Plaintiffs an opportunity to amend their Complaint. *Glenewinkel*, 2021 WL 2952833, at *4. The Court finds that allowing further amendment would be futile. Accordingly, in its discretion, the Court determines that further amendment of the pleadings is not warranted.

IV.

CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Officials' motion (Doc. 93) under Rule 12(b)(1) and **DISMISSES** Plaintiffs' claims **WITHOUT PREJUDICE**.

**SO ORDERED.**

**SIGNED: January 20, 2022.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

-17-